**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DONNA BRADEN,** ) | CASE NO. 1:16 CV 673 |
| ) | |
| **Plaintiff,** ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | <u>**OPINION AND ORDER**</u> |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

Plaintiff Donna Braden ("Braden"), challenges the final decision of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq*. ("Act"). The Court referred the case to Magistrate Judge Jonathan D. Greenberg for preparation of a Report and Recommendation ("R & R") pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b). After having reviewed the parties' merit briefs and the record, Magistrate Judge Greenberg recommends that the Court vacate the Commissioner's final decision and remand the case for further proceedings. (**Doc #: 18**.) The Commissioner timely filed an objection to the R & R (**Doc #: 19**), and Braden filed a response (Doc #: 20). Having reviewed the briefs and relevant parts of the record, the Court is prepared to issue its ruling.

**I.**

In August 2012, Braden filed an application for POD and DIB, alleging a disability onset date of June 1, 2009, later amended to August 11, 2011.  (Tr. 41, 70, 190, 221.)  She asserted as the basis for her disability "manic depressive, bipolar, hypertension, anxiety, high blood pressure, high cholesterol."  (Id.)  The applications were denied initially and upon reconsideration, and Braden requested a hearing before an administrative law judge ("ALJ").  (Tr. 41.)  The ALJ held a hearing on November 13, 2014, during which Braden, represented by counsel, testified along with a vocational expert ("VE").  (Id.)  On January 25, 2015, the ALJ, having reviewed the medical records, the state medical evaluations and the hearing testimony, issued a written decision finding that Braden is not disabled.  (Tr. 41-56.)

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled.  (Tr. 42 (citing 20 C.F.R. 404.152(a)))  The ALJ found that Braden worked after the alleged disability onset date of August 11, 2011, but that her work activity did not rise to the level of substantial gainful activity (Step 1).  (Tr. 43.) The ALJ then found that Braden had the following severe impairments: affective disorder (bipolar disorder not otherwise specified), anxiety disorder (adjustment disorder with anxiety), and borderline personality disorder (Step 2).  (Tr. 44.)  The ALJ found, however, that the severity of those impairments considered singly or in combination did not meet or medically equal the requirements of a listed impairment (Step 3).  (Tr. 44.)  The ALJ then conducted a residual functional capacity ("RFC") analysis based on the medical records and the hearing testimony.  (Tr. 46-54.)  The ALJ concluded, among other things, that Braden had mild restrictions in daily living activities, moderate difficulties with social functioning and moderate difficulties with regard to

concentration, persistence and pace. (Tr. 45.) Of note, the ALJ determined that,

> [w]ith regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant reports difficulty with her ability to maintain concentration and has gotten confused while driving. She indicates that she sometimes hesitates when using the remote control for the television, as she doesn't immediately remember how to use it . . .. Correspondence from a friend and former co-worker of the claimant indicates that the claimant has trouble staying on task from time to time and maintaining focus . . .. The record also indicates that the claimant has had problems remembering to take her medications and her care was transferred from the Free Clinic to Beacon Health, a provider closer to her home to assist her with maintaining compliance with her medication regimen . . .. This would suggest moderate difficulty with her ability to maintain concentration, persistence and pace.

(Id. (citations to the record omitted).) At the hearing, the ALJ posed the following questions to the vocational expert to determine whether Braden could perform her past relevant work or other work existing in significant numbers in the national economy:

> First off, I would like you to consider a person with the same age; education; and past work as the claimant; who can perform a full range of exertional work; and can interact occasionally; and superficially. And by superficially, I mean of a short duration for a specific purpose with both coworkers and supervisors; and should have no direct work with the general public. And by that I mean no customer service type work. This individual can perform work with no fast-pace or high production quotas. Given such a hypothetical individual, first off, would this hypothetical individual be able to perform the claimant's past work, as those occupations are either generally or actually performed?

(Tr. 108-09.) The VE responded that the hypothetical individual would not be able to perform Braden's past work as vending attendant, prep-cook, mold machine operator, ingredient mixer or bartender. (Tr. 109.) However, the VE stated that the hypothetical individual would be able to perform representative jobs in the economy, such as cleaner, dishwasher and janitor – all of which are medium, unskilled positions. (Tr. 109-110.) The ALJ then added another limitation to the hypothetical:

-3-

> I'd like you to further assume that this hypothetical individual can perform what I call low-stress work.  And by that I mean no arbitration; negotiation; responsibility for the safety of others; or supervisory responsibility.

(Tr. 110.)   The VE responded that such a hypothetical individual could still perform the previously identified jobs of cleaner, dishwasher and janitor.  The ALJ added another hypothetical:

> I'd like you to further assume that this hypothetical individual might be off task approximately 20 percent of the time due to symptoms from anxiety and depression.

(Id.)  The VE responded that there would be no jobs available for that hypothetical individual.

(Tr. 111.)  The ALJ then removed that limitation and posed another question:

> I'd like you to further assume that this hypothetical individual might be absent from work approximately four times per month against due to symptoms from anxiety and depression.

(Id.)  The VE responded that there would be no jobs for that hypothetical individual either.  (Id.)

Following the hearing, the ALJ found, with respect to Braden's RFC,

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can interact occasionally and superficially (meaning of a short duration for a specific purpose) with co-workers and supervisors, with no direct work with the general public (i.e. customer service type work) and no fast pace or high production quotas.  She can also perform low stress work meaning no arbitration, negotiation, or responsibility for the safety of others or supervisory responsibility.

(Tr. 46.)  Thus, the ALJ concluded that Braden was unable to perform her past relevant work (Step 4.)  But, considering her age, education, work experience and RFC, the ALJ concluded  a significant numbers of jobs existed in the national economy that she could have performed (Step 5).  (Tr. 54.)   Therefore, she was not "disabled" for DIB purposes.  Braden's request for review

by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

On March 18, 2016, Braden filed the within complaint challenging the Commissioner's final decision, raising two issues. First, Braden contended that the ALJ failed to give adequate reasons for crediting the opinions of the nonexamining state agency physicians over the opinion of the consultative examiner, Dr. Pickholtz. The Magistrate Judge disagreed with Braden and determined that the ALJ did not so err. Because Braden has not filed an objection and the time for filing such objections under Fed. R. Civ. P. 72(b) has expired, the Court adopts the Magistrate Judge's proposed, considered ruling on that issue.

Second, Braden contended the ALJ erred by failing to account for Braden's moderate limitations in concentration in the hypotheticals she posed to the VE which is the basis for the RFC finding and, ultimately, the ALJ's conclusion that Braden was not disabled. The Magistrate Judge agrees with this contention, and recommends that the Court vacate the Commissioner's final decision and remand the case for further proceedings consistent with the R & R. It is this recommended ruling to which the Commissioner objects.

**II.**

In reviewing a denial of Social Security benefits, the Court's review "is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  It is not necessary that the Court agree with the ALJ's finding.  *Id.* (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999)).  Rather, the ALJ's finding must only be substantially supported by the record.  *Id.*  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

Of particular relevance to this case, once the claimant establishes, at Step 4 of the sequential evaluation process, the inability to perform her past relevant work, as occurred here, the burden shifts to the ALJ to show that the claimant can perform other substantial gainful employment, and that such employment exists in sufficient numbers in the national economy (Step 5).  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009).  In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's exertional and nonexertional impairments.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

### III.

The Commissioner devotes much of its objection to a discussion of the evidence upon which the ALJ concluded that Braden had moderate limitations in concentration, persistence and pace–pointing out how the ALJ's RFC findings were based upon the conclusions of two state agency psychologists who concluded that Braden had moderate limitations in concentration,

persistence and pace.  It is undisputed that Braden has moderate limitations in concentration, persistence and pace.  The only question is whether the hypotheticals the ALJ posed to the VE failed to properly account for the moderate limitations in concentration that the ALJ found to be supported by the record.  If the ALJ failed to account for those limitations, then her reliance on the VE's testimony that Braden could perform "other jobs" in the national economy is not supported by substantial evidence.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  And the burden at Step 5 of the sequential evaluation process falls upon the ALJ.  *Id*. at 512 (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836 (6th Cir. 2006)).

The Commissioner argues that the ALJ adequately described all of Braden's deficits in concentration, persistence and pace when she restricted Braden to no fast pace or high production quotas and low stress work.  Per the Commissioner, concentration, persistence, and pace are "fluid concepts" and the ALJ's restrictions accounting for Braden's persistence and pace deficits necessarily included Braden's concentration deficits.  The Magistrate Judge disagreed with this contention, and the Court believes the Magistrate Judge got it right.  While the "no-fast-pace" or "high-production quotas" restrictions relate to pace and persistence, they do not address Braden's concentration deficits.  *See, e.g., Deaton v. Comm'r of Soc. Sec.*, No. 1:12–cv–531, 2013 WL 28978888, at *10 (S.D. Ohio June 13, 2013) (finding that restrictions on high stress work and quotas are adequate to account for pace limitations but not for concentration and persistence limitations); *Ball v. Comm'r of Soc. Sec.*, No. 1:09 CV 684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (excluding fast-paced production addresses one aspect of the limitation on pace but does not address the ability to stay on task for a sufficient length of time during the workday, which involves concentration as well as pace deficits).  As

Braden points out in her response, her concentration difficulties in using her television remote or maintaining a regular medication schedule are not "done in a stressful environment and none of them have to do with pressure to accomplish something within a certain amount of time." (Resp. 3.) Furthermore, the ALJ's low-stress work restriction does not cover Braden's concentration problems because the ALJ defined low-stress work as work excluding arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility – none of which has much, if anything, to do with concentration.

The Magistrate Judge noted that concentration deficits are "most commonly addressed by a restriction to simple, routine work." (R & R 37 (citations omitted).) While a restriction to simple, routine and/or repetitive work may be sufficient in some cases to address moderate concentration deficits, it is not sufficient in all cases–particularly where, as here, the record shows (and the ALJ noted) that Braden suffers from multiple severe mental impairments and her care was transferred to a healthcare facility closer to home because she had problems remembering her medications and when to take them.

According to the Commissioner, "Remanding this case to include an unskilled or simple, routine, repetitive work limitation would not result in a different outcome." (Obj. 6.) In other words, "by identifying only unskilled occupations, the ALJ *fully accounted* for Plaintiffs' concentration limitations in her RFC determination." (Obj. 17 (emphasis added).) In short, the Commissioner is asking the undersigned to find that unskilled work is *per se* commensurate with moderate limitations in concentration. No Sixth Circuit opinion, including the unreported decision in the case cited by the Commissioner, *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 (6th Cir. Aug. 30, 2000), supports this proposition. To begin, *Allison* is factually

distinguishable and does not involve a finding of moderate concentrational deficits. Second, *Allison* involved a claimant who did, in fact, receive a restriction limiting him to light work "so long as that work is simple, routine, and repetitive." *Id*. at *2. Third, the Commissioner misstates the holding in *Allison*. There, a panel of the Sixth Circuit held that the ALJ's "qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work." *Id*. at *4. That holding does not necessarily apply in every case–particularly in *Allison*, where the Sixth Circuit surmised that "the ALJ appeared to view simple, routine, repetitive work as synonymous with unskilled work." *Id.*

Most importantly, *Allison* is an unpublished Sixth Circuit case that was followed ten years later by *Ealy*, a reported Sixth Circuit decision. *Ealy* makes clear that an RFC and related hypothetical questions must adequately describe a claimant's limitations. 594 F.3d at 516-17. If they do not adequately describe a claimant's limitations, the ALJ's decision is not supported by substantial evidence. *Id*. at 516. Or, as the Magistrate Judge correctly noted, "The fact that the VE identified unskilled jobs *in response to the hypothetical questions that were posed* does not render the failure to account for Braden's concentrations deficits harmless." (R & R at 39 (emphasis added).)

Moreover, following *Ealy*, district courts within this Circuit have found that the fact "that a job is simple and unskilled has nothing to do with whether or to what degree a worker's moderate concentrational deficiencies will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies." *Candela v. Astrue*, 2011 WL 3205726 at *11 (N.D. Ohio Jul. 28, 2011) (quoting *Frederick v. Comm'r of Soc. Sec.*,

2011 WL 1518966 at *6 (E.D. Mich. Mar. 25, 2011), in turn citing *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996)).

## IV.

For these reasons, the Court **OVERRULES** the Commissioner's objection (**Doc #: 19**), **ADOPTS** the Magistrate Judge's R & R in its entirety (**Doc #: 18**), **VACATES** the Commissioner's decision denying DIB and **REMANDS** the case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

           */s/ Dan A. Polster    March 7, 2017*
           **Dan Aaron Polster**
           **United States District Judge**